**Hoa CAO et al., Petitioners,**

**v.**

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE; Adele Fasano, Ins. District Director for the San Diego District, Respondent.**

No. CIV00CV1991–L(JAH).

United States District Court, S.D. California.

Sept. 4, 2001.

Jason I. Ser, Federal Defenders of San Diego, San Diego, CA, for Petitioners.

Robert H. Plaxico, Office of U.S. Atty., San Diego, CA, for Respondents.

## ORDER DENYING APPLICATION FOR THE RELEASE OF MONETARY BONDS

LORENZ, District Judge.

Petitioners are five individuals currently subject to orders of removal, but released

on bond. They have requested the Court to exonerate the bonds. The Court denies petitioners' request.

### Background

On March 9, 2001, this Court granted several applications for Writs of Habeas Corpus on behalf of twenty-three (23) individuals detained by the Immigration and Naturalization Service (INS). The Court found, pursuant to the Ninth Circuit's decision in *Ma v. Reno*, 208 F.3d 815 (9th Cir.2000), that petitioners' permanent detention by the INS pending deportation was illegal as there was no reasonable likelihood that petitioners would be deported in the reasonably foreseeable future due to the inability to find countries that would accept them.

The INS conditioned the release of five (5) of the twenty-three (23) petitioners on the posting of monetary bonds. The bond requirements were set prior to this Court's March 9, 2001 order, the latest occurring in January of 2001. All five petitioners met the bond requirements and were released: petitioner Khang Quach was required to post a $10,000 bond; Khang Truong was required to post a $5,000 bond; petitioners Quang Vinh Le and Ale Vilaysane were required to post $1500

bonds; and petitioner Kim Kong was required to post a $2000 bond.

On June 28, 2001, the United States Supreme Court vacated the Ninth Circuit's decision in *Ma v. Reno* and remanded the case for further consideration. *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). The Ninth Circuit then issued a new opinion on July 27, 2001. *Ma v. Ashcroft*, 257 F.3d 1095 (9th Cir. 2001).

On May 7, 2001, the INS filed its notice of appeal of this Court's March 9 order. The Court of Appeals then stayed the proceedings on appeal until after the United States Supreme Court addressed the original *Ma* decision. The filing of the notice of appeal limits this Court's jurisdiction to address the effect of the new opinion in *Ma*.[1] *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)(per curiam)("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.")

Petitioners remain free on bond, but have applied to the Court to have these

---

1. In this Court's opinion, the Supreme Court's recent decision does not affect the Court's original order granting the petitioners' requests for habeas relief. The Ninth Circuit stated in its opinion following remand that the Supreme Court "essentially adopted the reasoning set forth in our opinion." *Ma v. Ashcroft*, 257 F.3d 1095 (9th Cir.2001). The Supreme Court remanded, however, for clarification of the standard employed by the Ninth Circuit. "The Court vacated our decision... because, it stated: '[our] conclusion may have rested solely upon the 'absence' of an 'extant or pending' repatriation agreement without giving due weight to the likelihood of successful future negotiations....'" *Ma*, 257 F.3d 1095 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)). In its opinion on remand, the Court

of Appeals stated "[o]ur conclusion that there was no likelihood of Ma's removal in the reasonably foreseeable future was based, and is based, not only on the fact that there was no 'extant or pending' repatriation agreement but also on the fact that there was an insufficient showing that future negotiations were likely to lead to a repatriation agreement within the reasonably foreseeable future." *Id.* This Court's March 2001 order granting petitioners' requests for habeas relief also did not rely entirely on the lack of an extant or pending repatriation agreement. The Court's decision relied on multiple factors to find there was no reasonable likelihood of removal in the reasonably foreseeable future, such as the lack of progress in negotiations over the past year and the length of detention for each of the detainees.

bonds exonerated. Neither the petitioners nor the respondent have submitted any briefs since the Supreme Court's decision or the Ninth Circuit's opinion on remand.

### Discussion

Petitioners argue that the INS has no statutory authority for the imposition of a bond requirement. They make this argument in two ways: first, they argue that Congress disavowed a bond requirement when it failed to list bond as one of the specified conditions of release while having specified bond requirements in similar statutes; second, in the alternative, petitioners argue the regulation established by the Attorney General which creates a bond requirement is unreasonable in light of the statutory interpretations and constitutional concerns discussed in *Ma* and *Zadvydas*.

Respondent argues that the relevant statute gave the Attorney General the power to establish a bond requirement and that such requirement, despite the *Ma* decision, remains reasonable.

The dispute over the power of the Attorney General to establish a bond requirement involves 8 U.S.C. § 1231(a)(3) and C.F.R. § 241.5. The issue is whether the regulation goes beyond the authority provided in the statute. Section 1231(a)(3) addresses the release and supervision of aliens subject to an order of removal who are not removed within the statutory 90–day removal period.[2] This section states that if an alien is not removed within the 90–day removal period, the alien "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C § 1231(a)(3). The section does not expressly include a bond provision. However, the section does state that the regulations "shall include provisions requiring the alien—"

**(A)** to appear before an immigration officer periodically for identification;

**(B)** to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

**(C)** to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

**(D)** to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

8 U.S.C. § 1231(a)(3).

The regulations required by § 1231(a)(3) are found at C.F.R. § 241 .5. C.F.R. § 241.5(a)(1)-(5) describe certain conditions of release after the 90–day removal period which closely track § 1231(a)(3)(A)-(D), including a directive that the alien must report periodically and provide relevant information. Section 241.5(b) gives an INS officer the option to require the posting of a bond: "An officer authorized to issue an order of supervision may require the posting of a bond in an amount determined by the officer to be sufficient to ensure compliance with the conditions of the order, including surrender for removal."

#### A. Reasonableness

The interpretation of a federal statute by a federal administrative agency is reviewed by the courts under the *"Chevron* doctrine."* This doctrine refers to the Supreme Court decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under the *Chevron*

---

**2.** "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period"). 8 U.S.C. § 1231(a)(1)(A).

doctrine, the court first looks to see if "Congress has directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778. Where the intent of Congress is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 843, 104 S.Ct. 2778. If, on the other hand, the statute is silent or ambiguous on the question, the court must then determine if the agency's answer to the question is based on a permissible reading of the statute.

■ There are two separate standards for agency constructions of statutory authority: an arbitrariness standard and a reasonableness standard. "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843–44, 104 S.Ct. 2778. Where there has been such a delegation, the Court held, the agency's regulations are "given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843–44, 104 S.Ct. 2778. Where the delegation is *implicit* rather than explicit, the agency's interpretation will be deferred to as long as it is "reasonable." *Id.* at 844–45, 104 S.Ct. 2778. A "reasonable" interpretation is one that "represents a reasonable accommodation of conflicting policies." *Id.* In the areas of the agency's expertise, such as the INS's expertise in alien affairs, the court's deference to the agency's elucidation or reasonable interpretation is particularly great. *See INS v. Aguirre-Aguirre,* 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).

■ In this Court's view, the statute does not clearly or unambiguously resolve whether a bond requirement is permissible. In fact, it does not mention bond at all, neither specifically excluding or including it as a condition or term of release. The question then becomes whether the INS's interpretation of the statute is permissible. Whether the answer is permissible depends, in part, upon whether Congress explicitly or implicitly gave the INS the authority to fill this gap—such as it may be. Both sides appear to agree that the statute admits of at least some ambiguity on this point.

The statute specifically directs the Attorney General to create regulations. 8 U.S.C § 1231(a)(3)(states the alien "shall be subject to supervision under regulations prescribed by the Attorney General."). The statute does not, however, explicitly give the INS the authority to establish terms or conditions of release beyond those enumerated in subsections (A) through (D). Read in context, the direction to create regulations is immediately followed by an express list of conditions for release. It could be argued that the Congress did not create a broad power to create conditions of release in the Attorney General, but rather a circumscribed power limited to the listed conditions.

On the other hand, the provision that lists the specific terms for supervised release does not preclude creating new terms of release such as a bond requirement. The phrase "shall include" can be read as either permissive or restrictive. Therefore, the statute cannot be fairly read as an explicit prohibition of bond. The power given to the INS to create a reasonable bond requirement can be implied. As the delegation to the Attorney General for the creation of a bond requirement was not express, the INS's reading of the statute will not be reviewed by the Court for arbitrariness or capriciousness. The Court will instead review the statutory interpretation pressed by the INS for reasonableness.[3]

---

**3.** The parties appear to agree that the reasonableness standard is appropriate.

Petitioners argue that "[i]f Congress did not intend to allow the INS to detain non-removable aliens indefinitely, as the Ninth Circuit held in *Ma*, it is also logical to assume that Congress did not intend that such individuals be required to post bond to secure their release." (Petitioners' Br. at 6.) The Court finds this reasoning unpersuasive. First of all, a reasonable bond requirement that the detainees can pay need not prolong the release of petitioners and, therefore, cannot be said as a matter of logic to necessarily interfere with the Supreme Court's decision that physical detention is inappropriate. In the case at bar, for instance all of the petitioners have posted bond and have been released from custody.

Second, the bond requirement set forth in 8 C.F.R. § 241.5(b) allows for bonds to secure all of the conditions of release specifically listed in the statute at (a)(3)(A)-(D) as well as the appearance for actual removal.

> An officer authorized to issue an order of supervision may require the posting of a bond in an amount determined by the officer to be sufficient *to ensure compliance with the conditions of the order, including surrender for removal.*

8 C.F.R. § 241.5(b)(emphasis added). Both the *Ma* and *Zadvydas* opinions cite to the conditions listed in (A)-(D) with approval. The Supreme Court even cites with apparent approval to 8 C.F.R. § 241.5. *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 2502, 150 L.Ed.2d 653 (2001). Each court took pains to emphasize that the proper result of their readings of the statute was only to release the petitioners from physical custody, but not from close and ongoing supervision. *Id.; Ma*, 257 F.3d 1095. It is not illogical to conclude that a bond requirement is a

reasonable regulation meant to help with the enforcement of the various conditions of release, including reporting for eventual removal. Even if bond was required solely to secure appearance for removal in a case where there was no substantial chance for removal in the *foreseeable* future, the order of removal is still a valid and enforceable order.[4] It is rationale to require reasonable security for an eventual removal— at least as reasonable as imposing any other restrictions or conditions upon release. In other words, as long as the Supreme Court agrees that it is constitutional to enforce supervisory conditions despite the remoteness of actual deportation, reasonable bail meant to aid in the enforcement of such conditions is reasonable.

Finally, the petitioners have not made any explicit constitutional argument akin to those made in *Ma* and *Zadvydas* and which drove the limiting statutory constructions in those cases. The Court, therefore, need not address the necessity of a limited reading of § 1231(a)(3) to avoid constitutional concerns.

### B. Negative Implication

Petitioners argue "Congress spoke to the question of bond when it failed to include it in § 1231(a)(3)(A)-(D)." Other immigration law provisions, petitioners point out, expressly include bond provisions. For example, 8 U.S.C. § 1226(a)(2)(A) permits the INS to set bond as a condition of release for aliens in deportation proceedings prior to a final order of removal; 8 U.S.C. § 1231(c)(2)(C) allows the INS to set bond as a condition of release for aliens who received a final order of deportation, but have had the order stayed. Petitioners claim the absence of any mention of bond is "conspicu-

---

4. *Cf. Ma*, 257 F.3d 1095 (citing to *Spector v. Landon*, 209 F.2d 481 (9th Cir.1954) which held an alien ordered deported but released on bond for twenty-four years was still subject to a valid order of removal).

ous" given the express delegation provided in other immigration provisions. The "doctrine of negative implication," according to petitioners, dictates the Court find the failure to expressly mention bond in § 1231(a)(3)(A)-(D) is an intentional exclusion meant to deny any authority to the Attorney General regarding bond requirements.

The Court finds that petitioners place too much reliance on the doctrine of negative implication and not enough on a close reading of the statute and statutory scheme. The negative implication doctrine alone is too weak and insubstantial to follow without a close reading of the context in which it is invoked and the statutory purpose it is meant to effectuate. The weakness is pointed out in R. Dickerson, *The Interpretation and Application of Statutes* 47 (1975), in discussing the Latin counterpart to the doctrine of negative implication, the maxim *expressio unius est exclusio alterius:* "Sometimes the maxim [*expressio unius est exclusio alterius* ] applies and sometimes it does not, and whether it does or does not depends largely on context." Dickerson gives this further pointed criticism:

> Several Latin maxims masquerade as rules of interpretation while doing nothing more than describing results reached by other means. The best example is probably expressio unius est exclusio alterius, which is a rather elaborate, mysterious sounding, and anachronistic way of describing the negative implication. Far from being a rule, it is not even lexicographically accurate, because it is simply not true, generally, that the mere express conferral of a right or privilege in one kind of situation implies the denial of the equivalent right or privilege in other kinds. Sometimes it does and sometimes it does not, and whether it does or does not depends on the particular circumstances of context. Without contextual support, therefore,

there is not even a mild presumption here. Accordingly, this maxim is at best a description, after the fact, of what the court has discovered from context.

*The Interpretation and Application of Statutes* at 234 (footnotes omitted). That which is true regarding the doctrine of negative implication is also true regarding most other doctrines of statutory interpretation. As the Supreme Court has stated:

> Some rules of statutory construction come down to us from sources that were hostile toward the legislative process itself and thought it generally wise to restrict the operation of an act to its narrowest permissible compass. However well these rules may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy.

*Sec. & Exch. Comm'n v. Joiner Leasing Corp.,* 320 U.S. 344, 350–51, 64 S.Ct. 120, 88 L.Ed. 88 (1943) (footnotes omitted). The Court, therefore, focuses its attention on the language and purposes of the statute itself.

The mere fact that two other release provisions, 8 U.S.C. § 1226(a)(2)(A) and 8 U.S.C. § 1231(c)(2)(C), refer to bond is not controlling. Petitioners do not advance any reason why Congress would enact legislation allowing bonds to be posted when an alien's removal has been stayed (8 U.S.C. § 1231(c)(2)(C)) or prior to a final order of removal (8 U.S.C. § 1226(a)(2)(A)), but not when there has been a final order of removal and the removal has not occurred during the 90–day removal period.

Turning to the statutory language itself, the Court finds the statute ambiguous. The second "shall" in § 1231(a)(3), which is followed by a specific list of terms for supervised release, is not an express prohibition against creating new terms of release such as a bond.requirement. The phrase "shall include" can be read as either permissive or restrictive. Likewise the language of delegation which states "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General" is unclear about the extent of the Attorney General's regulatory power.

As the Court decided in the last section, the regulations are a reasonable interpretation of an ambiguous statute relating to the INS bond requirement under the circumstances of this case. Despite these ambiguities, the Court is not convinced that petitioners' negative implication argument outweighs the apparent reasonableness of a bond requirement. The Court, therefore, upholds 8 C.F.R. § 241.5(b) and the bond requirements imposed upon petitioners.

IT IS THEREFORE ORDERED THAT:

1. Petitioners' Application for the Release of Monetary Bonds is HEREBY DENIED.

IT IS SO ORDERED.